# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

CAROL STRATTON and
M. LISA ATTEBERRY,

     Plaintiffs,

     v.

MCCONNELL LANDSCAPE AND
CONSTRUCTION, LLC and BELAIR
ROAD SUPPLY OF DELAWARE, LLC

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. CPU4-16-001376

Submitted: August 31, 2017
Decided: November 7, 2017

Elwood T. Eveland, Jr., Esquire
The Eveland Law Firm
715 N. King Street Suite 200
Wilmington, DE 19801
*Attorney for Plaintiffs*

Richard E. Berl, Jr., Esquire
Berl & Feinberg, LLP
Dartmouth Business Center
34385 Carpenter's Way
Suite 3
Lewes, DE 19958
*Attorney for Defendants*

## DECISION AFTER TRIAL

**SMALLS, C.J.**

Plaintiffs, Carol Stratton and Lisa Atteberry ("Plaintiffs") bring this action for damages to their property sustained during the construction of a rear outdoor patio. Plaintiffs entered into a contract with McConnell Landscape and Construction, LLC ("McConnell") to build an outdoor patio in the backyard of their vacation home. McConnell subcontracted with Belair Road Supply of Delaware, LLC ("Belair") (collectively, "Defendants") to supply the bricks for the patio. Plaintiffs allege that Defendants caused damage to their lawn and driveway during the delivery of the bricks and instillation of the patio.

On August 31, 2017, the Court held trial on the matter. The evidence consisted of testimony from Plaintiff Carol Stratton, her neighbor Brian Grawehr, Michael McConnell and Robert Basarab. The parties also submitted pictures as exhibits. At the conclusion of trial, the Court reserved decision. This is the Court's decision after trial.

## FACTUAL AND PROCEDURAL HISTORY

On May 11, 2016, Plaintiffs filed a complaint against Defendants indicating that Plaintiffs entered into a contract with McConnell for the installation of a patio and McConnell subcontracted with Belair to provide materials to be delivered to Plaintiff's property. The complaint alleges that Belair damaged Plaintiffs property by driving a heavy truck onto a newly poured driveway during the delivery of the patio pavers. The complaint further alleges that McConnell damaged Plaintiffs lawn during the construction of the patio by leaving planks across the grass. Plaintiffs seek judgment in the amount of $9,927.50, plus interest, attorney's fees, costs, and punitive damages.

1

On August 17, 2016, Defendants filed a joint Answer denying the allegations. Defendants concede that McConnell contracted with Belair to provide and deliver materials, but deny that Belair was an agent or employee of McConnell. Defendants also raise a number of affirmative defenses.

## PARTIES' CONTENTIONS

Plaintiffs allege when Defendant Belair delivered pavers to their property, the driver negligently drove and parked the delivery truck onto their newly paved driveway, causing damage. Plaintiff had the driveway repaired by a separate company. Plaintiff further alleges Defendant McConnell damaged the lawn of Plaintiff's property by leaving planks on the grass approximately four to five days a week and only removing them off the grass during the weekend. As a result, approximately 800 square feet of sod required to be replaced.

Defendant McConnell concedes that some damage to the lawn occurred as a result of installing the patio in the back of Plaintiff's yard. Upon completion of the patio, McConnell reseeded the affected areas twice in the month of August. Defendant Belair alleges that when the pavers were delivered, he parked in the most logical place being the Plaintiff's driveway since parking in the yard would have most likely caused damage to the lawn. Defendant Belair contends that the driveway damage was only a small "scuff" and Plaintiff did not inform Defendant's not to use the driveway.

2

## DISCUSSION

As trier of fact, the Court is to assess the credibility of the witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[1] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[2]

In civil matters, "a plaintiff has the burden of proving the elements of their case by a preponderance of the evidence.[3] Proof by a preponderance of the evidence means proof that something is more likely than not."[4] "The side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists."[5]

During trial, the contract between Plaintiff and McConnell was admitted as Plaintiff's Exhibit 1, which described the work to be completed. Most of the work was completed to satisfaction and Plaintiff testified that some of the work was changed or excluded during the instillation of the patio. The contract does not specify where the installers would park or how they would travel through the yard in order to complete the backyard patio. Defendant McConnell testified that in order to drive over the grass with the construction equipment from the street to the backyard patio, he laid down wooden planks so he would not damage the lawn. McConnell testified that he laid the planks down before he began working and left them

[1] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[2] *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[3] *Narayan v. Sutherland Global Holdings Inc.*, 2016 WL 3682617, at *8 (Del. Ch. Jul. 5, 2016) (internal citations omitted).
[4] *Id.*
[5] *Trumbo v. LST Investments*, 2015 WL 8200712, at *3 (Del. Com. Pl. Dec. 7, 2015) (internal citations omitted).

down during the week he worked at the Plaintiff's house. He further testified that he picked up the planks when he left for the weekend.

McConnell testified that he had conversations with Plaintiffs about the lawn being damaged by the planks so he re-sodded the grass twice during the month of August. He further acknowledged that he was aware the grass did not grow back thoroughly. Photographs of the damaged lawn was admitted into evidence as Plaintiff's Exhibit 3 and 3(a). The (2) two pictures show brown areas in the grass of Plaintiff's back yard.

Plaintiff's neighbor Brian Grawehr also testified. He was hired to water the Plaintiff's yard while they are away at their permanent residence in New Castle County. Grawehr testified that he watered the Plaintiff's yard approximately five (5) times per week. He testified he saw the planks down on the grass that McConnell used to transport equipment through the backyard and that the planks were left down overnight during the week. Grawehr further testified he observed the damage on the driveway and identified such in the photos admitted as Plaintiff's Exhibit 2, which consist of (6) six photos portraying damage to the driveway.

Defendant McConnell testified that the planks covered most of the side yard and he kept them down on the ground for three (3) days continuously and then took them up for three (3) days. McConnell also testified due to damaging the grass, he bought the best seed on the market and re-sodded the Plaintiffs yard twice in the weeks after the instillation of the patio. McConnell further testified that he stored his equipment on the driveway and he was aware of the fork lift that was parked on the driveway. However, he was not told by the Plaintiff's that he was prohibited from using the driveway nor was he told that the driveway was brand new.

4

Defendant McConnell and Plaintiff discussed the damage to the lawn and the driveway via text messages which were submitted as Plaintiff's Exhibit 8. The text messages indicate that McConnell instructed Belair to contact Plaintiff in order to fix the damaged driveway. In addition, there are text messages from Plaintiff to McConnell that the "grass is better but still some bare spots exists," after McConnell sodded.

Robert Basarab testified on behalf of Defendant Belair that he observed some markings on Plaintiff's driveway. Basarab testified that the driveway looked as if there was never a top coat applied and that the damage observed was only a "scuff." Plaintiff provided rebuttal testimony reiterating the extent of the damage caused by the Defendants and that the driveway was recently finished, including application of a top coat. Additionally, Plaintiff testified that the damage on the driveway consisted of more than a "scuff." Plaintiff admitted photographs of the damage to the driveway in Exhibits 2(a, b, c, d, e, & f) and Exhibits 7(a, b, & c) showing more than inconsequential damage.

Plaintiff testified that they received estimates to repair the lawn through Warton's Landscaping in the amount of $3,309.00, (Plaintiff's Exhibit 5). Plaintiff also testified that they received an estimate of $3,927.50, (Plaintiff's Exhibit 4) to repair the driveway and an estimate of $750 to treat and seal the driveway, (Plaintiff Exhibit 6).

Delaware law recognizes an implied warranty of good quality and workmanship.[6] This Court has previously held that this implied warranty attaches to contracts for renovations to a home.[7] "The implied warranty of good quality and workmanship presumes that contractors

---

[6] *See Bye v. George W. McCaulley & Son Co.*, 76 A. 621, 622 (Del. Super. 1908).
[7] *See Afilipoaei v. Fruehauf*, 2013 WL 5970491, at *1(Del. Com. Pl. Oct. 31, 2013); *Marcano v. Dendy*, 2007 WL 1493792, at *1 (Del. Com. Pl. May 22, 2007).

in the business have "the requisite skill" to perform the work they undertake and thus that "the work shall be done in a skillful and workmanlike manner."[8] However, the implied warranty does not "entitle the customer to excellence."[9] A contractor will be in breach of this implied warranty if he fails to "display[ ] the degree of skill or knowledge normally possessed by members of [his] profession or trade."[10] Plaintiff must prove breach of the implied warranty by a preponderance of the evidence, which requires her to have "the greater weight of the evidence" on her side."[11] "In determining whether the contractor's work was performed in a workmanlike manner the standard is whether the party "displayed the degree of skill or knowledge normally possessed by members of their profession or trade in good standing in similar communities" in performing the work."[12]

The issue here is not whether the work was performed in a workmanlike manner because no one questions the quality of the work regarding the patio. The question is whether Plaintiff's property was damaged during the instillation of the patio. The issue of good quality and workmanship extends not only to the work as contracted but also to how that work is performed. Defendant McConnell laid planks across the Plaintiff's lawn and left them covering the grass during the week. He only picked them up when he left the job site for the weekend. McConnell acknowledged to Plaintiff that the lawn had been damaged by the planks being left on the yard. McConnell re-sodded the Plaintiff's grass twice during the month of August which did not ensure proper growth and left some bare spots in the lawn. Defendant

---

[8] *Duncan v. JBS Const., LLC*, 2016 WL 1298280, at *3 (Del. Com. Pl. Mar. 31, 2016) (internal citations omitted).
[9] *Id.*
[10] *Afilipoaei*, 2013 WL 5970491, at *2.
[11] *Id.*
[12] *Id.*

6

admitted Exhibit 1(a, b, & c) which consisted of pictures taken after he re-sodded the grass showing more green grass but still some bare spots.

Since the residence in this case was a second home at the time, Plaintiff hired a neighbor, Brian Grawehr, to water their yard during the week. Grawehr testified that he saw the planks down on Plaintiff's grass throughout the week and overnight. Grawehr further testified that the Plaintiff's lawn never had any problems until after McConnell began working at the residence.

As noted above, Basarab testified, on behalf on Defendant Belair, that there was damage to the driveway but he referred to it as minimal which is inconsistent with overwhelming evidence. All other testimony and photographs describe the damage to the driveway as more than a minor scuff.

The evidence establishes that Plaintiff's driveway and lawn were damaged during the construction of the patio. Defendant McConnell failed to maintain the proper standard of care regarding Plaintiff's lawn by leaving planks over the grass, for more than three days at a time, during the months of July and August. His attempts to cure the damage by re-sodding are mitigating factors which merits consideration, but failed to cure the problem. The evidence further supports the conclusion that Belair parked the fork lift in the driveway for periods of time, causing damage to the newly paved driveway.

## CONCLUSION

For all the foregoing reasons, judgment is entered in favor of Plaintiff in the amount of $4,677.50, for the damage to the driveway and $3,309.00 for damage to the lawn, costs of these proceedings, and post-judgment interest until paid.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge

8